1999 ME 186

**Sharon HUFF et al.**

v.

**Kendra WILLIAMS and Rosemary Whitaker.**

Supreme Judicial Court of Maine.

Argued Dec. 7, 1999.

Decided Dec. 16, 1999.

David J. Van Dyke (orally), Berman & Simmons, P.A., Lewiston, for plaintiffs.

Andrew Ketterer, Attorney General, Leanne Robbin, Asst. Attorney General, (orally), Augusta, for defendants.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] Sharon Huff and Raymond Huff, individually and on behalf of their minor child appeal from a summary judgment entered in the Superior Court (York County, *Fritzsche, J.*) dismissing their negligence cause of action against two Department of Human Services (DHS) caseworkers, Kendra Williams and Rosemary Whitaker. The Huffs contend that the DHS employees are not protected by the discretionary immunity provided in the Maine Tort Claims Act for their intentional acts. We disagree and affirm the judgment.

[¶ 2] We briefly present the essential facts necessary to reach this conclusion. Upon learning that their nephew, twelve year-old Ricky, was travelling unaccompanied to Portland from North Carolina, the Huffs contacted DHS and sought to take Ricky into their home upon his arrival. Whitaker refused to allow Ricky to go home with the Huffs because she believed

that he presented a risk to the Huffs' two young daughters. Ricky had a history of sexual abuse, including the sexual assault of two of his younger sisters. DHS, therefore, took Ricky into temporary custody and placed him in a group home.

[¶ 3] While at the group home, the Huffs persistently sought their nephew's placement in their house. Neither Whitaker nor Williams explicitly told the Huffs about Ricky's past conduct. Instead, the caseworkers spoke in generalities about the behavior that caused Ricky not to be placed with the Huffs. Following counseling sessions involving Ricky and the Huffs, however, Ricky moved to the Huff residence. At some point after his arrival in Maine, Ricky sexually abused the Huffs' daughter. Sharon later asserted that she never would have "permitted the placement of Ricky [ ] into our household," had the Huffs known that he had sexually abused his sisters.

▆▆▆ [¶ 4] We review a grant of summary judgment by assessing the evidence in the light most favorable to the party against whom judgment was entered. *See Lyons v. City of Lewiston*, 666 A.2d 95, 99 (Me.1995). The judgment must be independently examined for any errors of law. *See Grossman v. Richards*, 1999 ME 9, ¶ 3, 722 A.2d 371, 373. Immunity can apply to a defendant, as a matter of law, when granting a summary judgment. *See Easler v. Dodge*, 1999 ME 140, ¶ 4, 738 A.2d 837, 838.

▆▆ [¶ 5] The Huffs assert that the discretionary immunity extended to State employees by the Maine Tort Claims Act, *see* 14 M.R.S.A. § 8111(1)(C) (Supp.1999),[1] does not apply to the instant case because of the alleged intentional misrepresentation of Ricky's sexual history by the DHS caseworkers. However, the acts of these governmental employees fall within the purview of subsection 8111(1)(C), and the caseworkers are immune from suit based on those acts. *See Polley v. Atwell*, 581 A.2d 410, 412–414 (Me.1990). In *Polley*, we set out four factors to consider in determining whether the governmental action at issue is discretionary:

1. The applicable statute reads, in pertinent part:

   **8111. Personal immunity for employees; procedure**

   **1. Immunity.** Notwithstanding any liability that may have existed at common law, employees of governmental entities shall be absolutely immune from personal civil liability for the following:

   **A.** Undertaking or failing to undertake any legislative or quasi-legislative act, including, but not limited to, the adoption or failure to adopt any statute, charter, ordinance, order, rule, policy, resolution or resolve;

   **B.** Undertaking or failing to undertake any judicial or quasi-judicial act, including, but not limited to, the granting, granting with conditions, refusal to grant or revocation of any license, permit, order or other administrative approval or denial;

   **C.** Performing or failing to perform any discretionary function or duty, whether or not the discretion is abused; and whether or not any statute, charter, ordinance, order, resolution, rule or resolve under which the discretionary function or duty is performed is valid;

   **D.** Performing or failing to perform any prosecutorial function involving civil, criminal or administrative enforcement; or

   **E.** Any intentional act or omission within the course and scope of employment; provided that such immunity shall not exist in any case in which an employee's actions are found to have been in bad faith.

   The absolute immunity provided by paragraph C shall be applicable whenever a discretionary act is reasonably encompassed by the duties of the governmental employee in question, regardless of whether the exercise of discretion is specifically authorized by statute, charter, ordinance, order, resolution, rule or resolve and shall be available to all governmental employees, including police officers and governmental employees involved in child welfare cases, who are required to exercise judgment or discretion in performing their official duties.

   14 M.R.S.A. § 8111(1) (Supp.1999).

(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program or objective?

(2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective?

(3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved?

(4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Polley,* 581 A.2d at 413 (spacing changed) (citing *Darling v. Augusta Mental Health Institute,* 535 A.2d 421, 426 (Me.1987); *Trianon Park Condominium Ass'n v. City of Hialeah,* 468 So.2d 912, 918 (Fla.1985)).

[¶ 6] Whitaker's and Williams's behavior is protected by subsection 8111(1)(C): (1) both caseworkers made their decisions pursuant to DHS's official mission and objectives, *see* 22 M.R.S.A. §§ 4003–4004 (1992 & Supp.1999) (vesting responsibility for placing children in suitable foster homes with DHS); (2) the decision not to discuss in detail Ricky's prior sexual history was necessary to satisfy the mandate of subsection 4003(4) that required DHS to find a placement for Ricky, *see* 22 M.R.S.A. § 4008 (1992 & Supp.1999) (protecting the confidentiality of children in DHS custody); (3) these caseworkers exercised their professional judgment as DHS employees in determining the extent of information released to the Huffs; and (4) DHS possesses the requisite statutory authority under subsection 4004(1)(A)(3) to have the caseworkers speak to the Huffs concerning Ricky's placement with them.

[¶ 7] Even assuming *arguendo* that Whitaker and Williams were negligent or acted in bad faith by failing to disclose the full extent of Ricky's prior sexual deviance to the Huffs, they still are protected by the provisions of subsection 8111(1)(C). *See Bowen v. Department of Human Services,* 606 A.2d 1051, 1055 (Me.1992) (finding that negligent acts fall within the scope of discretionary immunity); *Grossman,* ¶ 10, 722 A.2d at 374–375 (holding that the "bad faith" exception of subsection 8111(1)(E) does not apply to discretionary immunity granted by subsection 8111(1)(C)). Although some facts may be in dispute, those facts are immaterial. The Legislature has immunized from suit caseworkers' discretionary actions within the scope of their employment.

The entry is:

Judgment affirmed.